**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION**

SHAILJA GANDHI, REVOCABLE TRUSTD )
(NOVEMBER 6, 2002), et al., )
          )
         Plaintiffs, )
          )    Case No. 09-cv-3141
v. )
          )
SITARA CAPITAL MANAGEMENT, LLC and )
RAJIV PATEL, )
         Defendants.

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS**

James L. Kopecky
James L. Kopecky, P.C.
190 S. LaSalle St.  Suite 850-A
Chicago, IL  60603
ARDC # 6225359

Daryl M. Schumacher
The Law Offices of Daryl M. Schumacher, P.C.
190 S. LaSalle Street,  Suite 850
Chicago, IL  60603
Phone:  (312) 380-6585
Fax:     (312) 324-0666
ARDC #6244815

## INTRODUCTION

Plaintiffs are sophisticated, accredited investors. Plaintiffs made an educated decision to invest with Sitara, and now in a sophisticated attempt to recover losses on the investment, they falsely paint Mr. Patel as a rogue hedge fund manager recklessly playing with other people's money. This Court should ignore the gratuitous rhetoric and focus on the evidence. The fact is that Patel himself was a substantial investor in Sitara Partners, L.P. ("Sitara" or the "Fund"), as were members of his family. More important, the Offering Documents and disclosures expressly authorized Defendants to make the investment that is at the very core of Plaintiffs' allegations. Defendants repeatedly disclosed, in writing, that there would be no limitation on concentration in any particularity security. Thus, the conduct of which Plaintiffs now complain fell squarely within the scope of permissible trading activity that Plaintiffs authorized when they signed the Sitara Limited Partnership Agreement. Moreover, Plaintiffs never allege that they relied on any alleged misrepresentations. Plaintiffs never, and could not have, relied upon the vast majority of the alleged misrepresentations they highlight in their Complaint. Despite Plaintiffs' artful pleading, those alleged misrepresentations all occurred months and sometimes years *after* Plaintiffs' investments. Plaintiffs cannot plead a cause of action and this Honorable Court should dismiss the complaint.

## FACTUAL BACKGROUND

The Offering Documents consisted of: (i) a Confidential Private Offering Memorandum dated April 1, 2005 (Exhibit 1 to Plaintiffs' Complaint), (ii) a Limited Partnership Agreement (hereinafter, the "Partnership Agreement," attached as Exhibit 4 to Plaintiffs' Complaint; and (iii) an Investment Management Agreement among the Partnership and the General Partner.[1] As set forth below, the Offering Documents expressly permitted Defendants to invest 90% of the Fund's assets in a single security, and gave Defendants broad and absolute discretion to effect trades as they deemed fit and appropriate.

---

[1] The Subscription Agreement Plaintiff's signed contained a "nonreliance" clause whereby Plaintiffs agreed that they would only rely upon information contained in the above-described Offering Documents. See Subscription Agreement, Paragraph 2(e) (attached as Exhibit 2 to Plaintiffs' Complaint).

### A. The Offering Documents Permitted Defendants to Concentrate 90% of the Fund's Assets in a Single Security.

The Offering Memorandum discusses the Fund's investment objectives at length. It states "It is not a goal of the Partnership to maintain a highly diversified portfolio." (Compl. Exhibit 1, p. 15). Within that context, the Offering Memorandum specifically and repeatedly discloses Defendants' ability to concentrate 90% of the Fund's assets in a single security:

- "[T]he Partnership Agreement imposes ***no limits on the concentration*** of the Partnership's investments in particular securities, industries, or sectors and at times the Partnership may hold a relatively small number of securities positions, each representing a relatively large portion of the Partnership's assets." (Compl. Exhibit 1, p. 30)(emphasis added).

- "The Partnership Agreement imposes ***no limits on the concentration*** of the Partnership's investments in particular securities, industries, or sectors." (Compl. Exhibit 1, p. 15)(emphasis added).

- "The Partnership Agreement ***does not limit*** the amount of the Partnership's capital that may be committed ***to any single investment***, industry or sector." (Compl. Exhibit 1, p. 30)(emphasis added).

The Offering Memorandum further notes that the Fund may invest outside of the stated guidelines which could present a "special risk" in the level of diversification:

> There are instances where the General Partner may feel that it is in the best interest of the Partnership to effect a transaction outside of these guidelines. This may represent a special risk in that the level of diversification of the Partnership's portfolio may be lower than a well-diversified portfolio.

(Compl. Exhibit 1, p. 15).

### B. The Offering Documents Vested Defendants with Broad Authority to Make Investment Decisions and Change the Fund's Investment Objectives.

The Offering Documents clearly articulated the broad and absolute discretion with which Defendants could make investment decisions:

- ***"All investment decisions will be made exclusively by the General Partner, in its sole and absolute discretion."*** (Compl. Exhibit 1, p. 12)(emphasis in original).

- "The General Partner has unlimited authority to administer the financial activities of the Partnership." (Compl. Exhibit 1, p. 15).

- ***"The General Partner will be free to pursue such investment strategies, as it deems fit or appropriate at any given time."*** (Compl. Exhibit 1, pp. 12-13)(emphasis in original).

- ***"Moreover, the General Partner may change, in its absolute discretion, the investment objectives and policies of the Partnership and there can be no assurance that it will not exercise such power."*** (Compl. Exhibit 1, p. 13)(emphasis in original).

- **"**The Limited Partnership Agreement gives the General Partner broad discretion to expand, revise or contract the Partnership's business without the consent of the Limited Partners. Thus, ***the investment strategies of the General Partner may be altered without prior approval by, or notice to, the Limited Partners*** if the General Partner determines that such change is in the best interests of the Partnership." (Compl. Exhibit 1, p. 31)(emphasis added).

**C. The Offering Documents Highlighted the Speculative Nature of an Investment in the Fund.**

Finally, the Offering Documents disclosed the speculative nature of an investment in the Fund:

- "An investment in the Partnership should be viewed as a speculative investment." (Compl. Exhibit 1, p. 15).

- "[The Partnership] is not intended as a complete investment program and is designed only for investors . . . who can afford the loss of their investment." (Compl. Exhibit 1, p. 15).

- "There can be no assurance that the Partnership will achieve its investment objectives." (Compl. Exhibit 1, p. 15).

**D. Plaintiffs' Allegations**

Plaintiffs asserted claims against Defendants for violations of the Securities Act of 1933 and Securities Exchange Act of 1934 (Counts I-IV); the Illinois Securities Law of 1953 (the "Illinois Securities Act") (Counts V-X); the Illinois Consumer Fraud and Deceptive Practices Act (Count XI); ERISA (Count XII); breach of contract (Count XIII); breach of fiduciary duty (Count XIV); common law fraud in the inducement (Count XV); fraudulent misrepresentation (Count XVI); negligent misrepresentation (Count XVII); and respondeat superior (Count XVIII). All of Plaintiffs' claims are predicated upon the fundamental proposition that Defendants were contractually prohibited from concentrating 90% of the

3

Fund's assets to a single security, Freddie Mac, in violation of written and oral promises to diversify the Fund's assets. However, Plaintiffs' interpretation is false; the Offering Documents permitted Defendants to concentrate 90% of the Fund's assets in a single security and Plaintiffs, therefore, cannot state the claims they have alleged.

ARGUMENT

## I.      Standard of Review.

While the court must accept all well-pleaded factual allegations of the Complaint as true, the court is not bound by plaintiff's legal characterization of the facts. *Gomez v. Ill. State Bd. Of Education,* 811 F.2d 1030, 1033 (7th Cir. 1987). Federal Rule of Civil Procedure 9(b) imposes a more stringent pleading requirement for fraud claims. *See Arazie v. Mullane,* 2 F.3d 1456, 1465 (7th Cir. 1993). Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b) a plaintiff must specify, *inter alia,* the content of the misrepresentation as well as the time, place and method by which the misrepresentation was communicated to the Plaintiff. *Sears v. Likens,* 912 F.2d 889, 893 (7th Cir. 1990). This means Plaintiffs must allege the "who, what, where, when and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990). Moreover, just as it is improper to "lump" multiple defendants together in fraud allegations (*Id.*), Plaintiffs cannot lump themselves together without specifically alleging each Plaintiff's reliance on the alleged misrepresentations. *In re Healthcare Compare Corp. Sec. Litig.,* 75 F.3d 276, 280-281 (7th Cir. 1996)(reliance is an element of a 10(b) claim; *Tirapelli v. Advanced Equities, Inc.* 251 Ill. App. 3d 450, 813 N.E.2d 1138, 286 Ill. Dec. 445 (1st Dist. 2004) (reliance is an element of a claim under the Illinois Securities Act).

## II.     Plaintiffs Have Not Identified Any Alleged Misrepresentations Upon Which They Reasonably Relied In Purchasing Interests in the Fund, and Therefore Cannot State Claims Under Section 10(b) of the Exchange Act (Counts III-IV); the Illinois Securities Act (Counts V-X); or Fraud In The Inducement (Count XV)

To state a valid Section 10(b) or Rule 10b-5 claim, a plaintiff must allege that the defendant (1) made a misstatement or omission, (2) of material fact, (3) with scienter, (4) in connection with the purchase or sale of securities, (5) upon which the plaintiff relied, and (6) that reliance proximately cased plaintiff's injuries. *In re Healthcare Compare Corp. Sec. Litig.,* 75 F.3d 276,

280-281 (7th Cir. 1996). Similarly, reasonable reliance on an alleged misrepresentation is an element of a claim under section 12 of the Illinois Securities Act. *Tirapelli v. Advanced Equities, Inc.* 251 Ill. App. 3d 450, 813 N.E.2d 1138, 286 Ill. Dec. 445 (1st Dist. 2004). Finally, to state a claim for fraud in the inducement a plaintiff must allege reasonable reliance on defendant's alleged misrepresentation. *Haase v. Grant,* 2008 WL 372471 at *2 (Del. Ch. 2008).

Moreover, all of the alleged misrepresentations identified in Plaintiffs' Complaint took place well <u>after</u> Plaintiffs made their decision to invest in the Fund. Thus, as a matter of law, Plaintiffs could not have relied on the alleged misrepresentations in connection with their purchase of interests in the Fund. [2]

All of the Plaintiffs made investments in the Fund in April of 2005, or shortly thereafter. (See Complaint ¶¶9-12). The alleged misrepresentations occurred later:

| Paragraph | Alleged Misrepresentation | Date Drafted or Published | Exhibit Reference |
|---|---|---|---|
| 49 | In his letter to the limited partners of January 2007, Patel set forth risk control parameters relating to the diversification of the Fund's portfolio. Patel stated that he intended to manage a portfolio consisting of approximately 10-15 securities. | January, 2007 | 3-B |
| 50 | However, Patel stated that he would not allow any one position to jeopardize the Fund: "I don't take this level of concentration lightly and you can be assured that there is a very favorable risk vs. reward ratio that I perceive whenever a holding exceeds 15% (including market appreciation). **I will often pare back holdings to ensure that the concentration does not become excessive."** | January, 2007 | 3-B |
| 74 | While investors may argue that funds should be compensated commensurate with performance, this has unintended consequences – consequences that would make our real estate agents look like angels.<br><br>Unfortunately, this "pay for performance" | October, 2006 | 3-C |

---

[2]  Plaintiff Amit Vyas initially invested in the Fund in April of 2005, but made additional investments between his initial investment and April 2007. (Compl. ¶11). To the extent that any portion of Plaintiff Vyas's investment post-dates an alleged misrepresentation, his claims under Counts III-X and XV must still be dismissed because he has not alleged his reliance on any such  misrepresentation.

| | arrangement can lead to trying to hit home runs without regard for capital risk.<br><br>The reason why is that there is little penalty for a lack of performance. Some managers engage in glorified forms of day trading which capture small changes in price by trading fast and furiously.  Others engage in speculative bets that pay highly when they are right.  If they win big, they win big.  **If they lose . . . it's not their money.  After all, they can always wind down operations and start a new fund.** | | |
|---|---|---|---|
| 78(a)(2) | The Fund's portfolio would be diversified, consisting of 10-15 securities and, implying, readily able to be monitored. | January, 2007 | 3-B |
| 78(a)(3) | The Fund would avoid concentration in just a few securities. | January, 2007 | 3-B |

As a matter of law, Plaintiffs could not have relied on the representations set forth in paragraphs 49, 50, 74, 78(a)(2) or 78(a)(3) because those documents were not in existence at the time Plaintiffs made their investments in the Fund.  Other alleged misrepresentations were contained in a document published on Sitara's website:

| Paragraph | Alleged Misrepresentation | | Exhibit Reference |
|---|---|---|---|
| 46 | The Investment Principles Document state[s] that the Fund's objectives were: "Beat 90% of all money managers; Beat all three market indices (Dow, S&P, and NASDAQ); Goal:  20% annualized net returns over a 5-year period; preserve capital and stay ahead of inflation." | Website | 3-D |
| 47 | The Investment Principles Document makes statements concerning the Fund's risk control parameters:  *Defense before offense . . . Understand and manage downside risk . . .* **_If we are wrong on a company, we don't lose much._** | Website | 3-E |
| 48 | The Investment Principles Document also describes the Fund's investment horizon:  "Patience is important. . . Investments need time to work out (e.g., "seasoning process") . . . We will sacrifice short-term returns for long term benefit."  Further, the document | Website | 3-F |

| | states that Patel expected to hold investments for 2-5 years. | | |
|---|---|---|---|
| 78(a)(4) | The Fund would jettison losing securities – "If we are wrong on a company we don't lose much." | Website | 3-E |
| 78(a)(5) | The Fund would sacrifice short-term returns for long term benefits. | Website | 3-A |

It appears that the above-referenced statements were not posted on Sitara's website until November of 2005.  However, regardless of the date Sitara posted those representations to its website, Plaintiffs have not alleged that they viewed those representations prior to making their investments in the Fund (or ever for that matter).  As a matter of law, alleged misrepresentations that occurred after Plaintiffs' investments (such as those set forth in Group Exhibit 3 to Plaintiffs' Complaint) cannot form the basis of Plaintiffs' claims in Counts III-X or XV.

### A. Plaintiffs Have Not Alleged A Misrepresentation In The Offering Documents With Specificity As Required By Rule 9(b).

In securities fraud cases, Federal Rule of Civil Procedure 9(b) requires that the essential elements of fraud be pled "in detail."  *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990).  Despite this heightened pleading requirement, Plaintiffs have not identified a single misrepresentation or omission in the offering documents, or their reliance thereon.  Instead, Plaintiffs' only allegations that the Offering Documents contained material misrepresentations or omissions are conclusory and generic, and fail to identify any specific misrepresentation:

- "The 'prospectus' in the form of Sitara's PPM, (see Exhibit 1), which offered and sold the securities in the form of Sitara Partner's Units to Plaintiffs, was false and misleading because it made false and misleading statements of material facts and omitted to state material facts necessary to be stated in order to make the statements made, in light of the circumstances under which they were made, not false and misleading, as more fully described in paragraphs 45-78, above, and incorporated herein by reference."  (Compl. ¶91);

- "Sitara Partner's PPM, related offering documents, and subsequent written and verbal representations issued by Patel and Sitara Capital constitute misstatements of material facts and omissions to state material facts within the meaning of SEC Rule 10b-5 . . . (Compl. ¶94).

Plaintiffs' allegations are circular; Plaintiffs essentially allege that the "PPM" was false and misleading because it contained false and misleading statements.  Plaintiffs' allegations do

7

not satisfy the specificity requirement of Rule 9(b) because they do not identify the misrepresentation or the allegedly omitted fact that makes the PPM false and misleading. Defendants are entitled to know (i) which specific representations form the basis of Plaintiffs' statutory and common law fraud claims, (ii) the time, place and manner in which each alleged misrepresentation was communicated to each Plaintiff, and (iii) whether each Plaintiff relied on that statement.

Simply put, Plaintiffs cannot base their claims in Counts III-X and XV on the documents contained in Group Exhibit 3 to the Complaint. Plaintiffs' only relevant allegations, involving the Offering Documents, do not identify any misrepresentations of material fact _or_ Plaintiffs' reliance thereon. As such, Counts III-X and XV of Plaintiffs' Complaint must be dismissed.

## III.    Counts I and II Must Be Dismissed.

Counts I and II of Plaintiffs' Complaint assert claims for violations of Section 5 and 12 of the Securities Act of 1933. The thrust of Plaintiffs' argument in Count I is that because Defendants sold securities to non-accredited investors, Defendants failed to meet the criteria for exemption from the registration requirement contained in Section 6 of the Securities Act. That argument is without merit as a matter of law. Regulation D – Rules Governing the Limited Offer and Sale of Securities Without Registration Under the Securities Act of 1933 expressly permits the sale of sale of securities to up to 35 non-accredited investors. See Rule 501(e) (*Calculation of Number of* Purchasers) and Rule 506(b)(2)(*Exemption for Limited Offers and Sales Without Regard to Dollar Amount of Offering*)(permitting sale of securities to up to 35 non-accredited investors while preserving the exemption from the registration requirement). Thus, even assuming the truth of Plaintiffs' factual allegation (that Defendants sold securities to an unaccredited investor), that allegation is insufficient to state a claim under Sections 5 and 12(1) of the Securities Act, and Counts I and II must be dismissed.

Moreover, the Court should dismiss Count II of Plaintiffs' Complaint, which asserts a violation of Section 12(2) of the Securities Act, for the additional reason that Section 12(2) applies only to securities that were publicly-offered via a prospectus. *Gustafson v. Alloyd Co., Inc.,* 513 U.S. 561 (1995). Interests in Sitara were not publicly offered. While Plaintiffs note that they have asserted their claim on the good faith belief that *Gustafson* was wrongly decided,

*Gustafson* is controlling precedent, and Plaintiffs cannot bring a claim in this case based on Section 12(2) of the Securities Act.

## IV.   The Choice of Law Provision Bars Plaintiffs' Claims Under the Illinois Consumer Fraud and Deceptive Practices Act and the Court Must Dismiss Count XI.

Count XI asserts a claim for violations of the Illinois Consumer Fraud and Deceptive Practices Act. However, the clear and express language of the Limited Partnership Agreement provides that Delaware law governs this dispute. The Limited Partnership Agreement provides:

> 14. **GOVERNING LAW.** Notwithstanding the place where this agreement may be executed by any of the parties, the parties expressly agree that all the terms and provisions hereof shall be construed under the laws of the state of Delaware, without regard to the principles of conflicts of laws thereof, and, without limitation thereof, that the act as now adopted or as may be hereafter amended shall govern the limited liability company aspects of this agreement.

(Compl. Exhibit 4, ¶15.2). Notwithstanding this clear choice of law provision, Plaintiffs have asserted claims against Defendants under the Illinois Consumer Fraud and Deceptive Practices Act (Count XI). These claims should be dismissed and the intent of the parties to govern disputes under Delaware law should be upheld. *See Hofeld v. Nationwide Life Ins. Co., 59* Ill. 2d 522, 529 (1975) ("When [the parties'] intent is expressed, it should be followed.").

### A. Plaintiffs' Consumer Fraud Claims Are Subject to the Choice of Law Provision.

Under Illinois law, "tort claims that are dependent on a contract are "subject to [the] contract's choice-of-law clause regardless of the breadth of the clause." *Medline Indus. Inc.,* 230 F.Supp.2d at 862. In determining whether a tort claim is dependent upon the contract, courts examine whether: (1) "the [claim] alleges a wrong based upon interpretation and construction of the contract," (2) the "tort claims [are] closely related to the parties' contractual relationship," and (3) the tort claim "could exist without" the contractual agreement which contains the choice-of-law provision. *Birnberg v. Milk Street Residential Assoc., Ltd.,* 2003 WL 151929 at 14 (N.D.Ill. 2003)(internal quotations omitted). The choice of law provision applies under the *Birnberg* test.

1. Plaintiffs' Consumer Fraud Claims Allege a Wrong Based on Interpretation and Construction of the Contract.

Plaintiffs' claims allege a wrong which requires the interpretation and construction of the Offering Documents. Plaintiffs have alleged that Defendants' conduct in purchasing and selling Freddie Mac shares in September of 2008 constitute violations of Section 2 of the Illinois Consumer Fraud Act. Defendants' authority to effect those transactions is at issue, and Plaintiffs' claims necessarily require the court to examine, *inter alia*, the portions of the Offering Documents which expressly permit unlimited concentration in a single security. (*See* p. 2, *supra)*. Thus, the first of the three *Brinberg* tests confirms that Plaintiffs' claims fall within the contract's choice of law provision.

2. Plaintiffs' tort claims are closely related to the parties' contractual relationship

The second factor under *Brinberg,* whether Plaintiffs' claims are closely related to the parties' contractual relationship, similarly supports application of the choice of law provision. The entire dispute in this matter arises out of Plaintiffs' contractual agreement to invest in the Fund. Defendants' duties, obligations and authority is set forth in the Offering Documents. The Court could not assess Plaintiffs' claims without evaluating the terms of the parties' contractual relationship. Accordingly, Plaintiffs' claims are inextricably intertwined with the parties' contract, and the second factor articulated in *Brinberg* weighs in favor of application of the choice of law provision.

3. Plaintiffs' claims could not exist without the contract.

The third and final *Brinberg* factor similarly supports application of the choice of law provision to Plaintiffs' claims under Illinois and Delaware law; Plaintiffs' claims could not exist without the contract. Plaintiffs' claims arise out of a business transaction: an investment in a hedge fund. That transaction could not have taken place without an agreement because Defendants required potential investors to sign the subscription documents before becoming limited partners in Sitara Partners, LP and investing in the fund. Specifically, the Subscription Agreement provides, "Prospective Investors must complete all of the Subscription Documents contained in this package." (Compl. Ex. 2, at p. 1). Thus, the third *Brinberg* factor weighs in favor of applying the choice of law provision to Plaintiffs' claims under Illinois law.

### B.  The Choice of Law Provision Requires the Application of Delaware Law.

Both Illinois and Delaware courts honor contractual choice of law provisions as long as the provision meets the two-part test for enforcement: the choice of law provision must: (i) bear some relationship between the chosen law and the parties or the transaction, and (ii)  may not contravene Illinois or Delaware public policy  *Fister/Warren v. Basins, Inc.,* 217 111. App. 3d 958, 963 (1st Dist. 1991); *Organ v. Byron,* 435 F. Supp. 2d 388, 392 (D. Del. 2006).  Both Illinois and Delaware courts have routinely enforced contractual choice of law provisions under similar circumstances.

For example, in *WTM, Inc. v. Henneck,* 125 F. Supp. 2d 864, 868 (N.D. Ill. 2000), the parties entered a stock purchase agreement that contained an Illinois choice of law provision. Nonetheless, plaintiffs' complaint included a claim for violations of Minnesota's statutory securities law.  The court upheld that choice of law provision, and precluded plaintiffs from bringing claims under Minnesota's securities laws.   The court, applying Illinois law, specifically rejected plaintiffs' argument that the alleged misrepresentations should not be governed by the choice of law provision in the stock purchase agreement because they occurred prior to the execution of that agreement, noting "[t]he sale of the securities at issue was effectuated by the Agreement.  Thus, the [Minnesota Securities Act claims] are governed by the choice-of-law provision contained in the Agreement." *WTM,* 125 F. Supp. 2d at 867.

The *WTM* Court also found that the other factors necessary to uphold a contractual choice of law provision were present.   Specifically, the court held that the choice of law provision did not violate Illinois public policy.  More important, the court found an acceptable nexus between the transaction and the chosen law because the defendant was incorporated in Illinois. *Id.* at 868. The court, therefore, dismissed plaintiffs' Minnesota statutory securities claims. *Id.*

Other courts have similarly upheld choice of law provisions in securities-related contracts.  In *Organ v. Byron,* plaintiff brought an Illinois Securities Act claim.  Defendants moved to dismiss that claim based on a contractual choice of law provision that specified that Delaware law governed the dispute.  The court dismissed plaintiffs' Illinois Securities Act claims based on the Delaware choice of law provision.  435 F. Supp. 2d 388, 393 (D. Del. 2006).  The court also found that enforcing the choice of law provision and dismissing

11

plaintiff's Illinois Securities Act claim did not contravene Illinois public policy. *Id.* at 392-93.

Here, the choice of law provision is enforceable and bars Plaintiffs' claims under Illinois law. First, Delaware law is sufficiently connected to this case. Defendant Sitara Capital is a Delaware limited liability company. *See* Comp1. ¶. 1; *see e.g., WTM, Inc.,* 125 F. Supp. 2d at 868 (Illinois law reasonably related to the dispute since defendants were Illinois corporations); *Haft v. Dart Group Corp.,* 841 F. Supp. 549, 563 (D. Del. 1993) (connection between transaction and Delaware law "clearly present" where defendants were incorporated in Delaware). Second, enforcing the Delaware choice of law provision in this case will not violate Illinois public policy. "A court should not refuse to apply the law of a foreign State, however unlike its own, unless it is contrary to pure morals and abstract justice, or unless the enforcement would be of evil example and harmful to its people." *Potomac Leasing Co. v. Chuck's Pub, Inc.,* 156 Ill. App. 3d 755, 759 (2d Dist. 1987) (Michigan choice of law provision did not violate Illinois public policy).

Plaintiffs agreed that Delaware law would control disputes relating to investments in the Fund, and Plaintiffs should be held to their agreement. Count XI, which is based on the laws of Illinois, should be dismissed.[3]

## V. Plaintiffs Cannot State a Breach of Contract Claim.

Count XIII asserts a claim for breach of the Limited Partnership Agreement, which is attached as Exhibit 4 to Plaintiffs' Complaint. Plaintiffs have alleged that Defendants breached the Partnership Agreement by investing over 90% of the Fund's assets in a single stock. (Compl. ¶¶45-78 and 148). Plaintiffs' allegations, however, fail to state a breach of contract claim because the Partnership Agreement did not prohibit Defendants from investing 90% of the Fund's assets into a single stock. (See Exhibits 4 to Plaintiffs' Complaint). Quite the opposite, the Offering Memorandum describing the offering repeatedly highlighted Defendants' authority under the Partnership Agreement to concentrate 90% of the Fund's assets in a single security: "The Partnership Agreement imposes no limits on the concentration of the Partnership's investments in particular securities, industries, or sectors." (Compl. Exhibit 1, p. 15.) Thus, Plaintiffs' allegations fail to state a claim for breach of contract.

---

[3] This choice of law provision does not preclude Plaintiffs' claims under the Illinois Securities Act. The Subscription Agreement Plaintiffs signed contains a separate choice of law provision governing securities claims.

**VI.    Plaintiffs Cannot State Breach of Fiduciary Duty Claims Under ERISA or Common Law.**

Counts XII and XIV allege that Defendants breached their fiduciary duties to Plaintiffs by making the Freddie Mac investments in September of 2008.  Plaintiffs' claims fail for two reasons.  First, Plaintiffs cannot establish that Mr. Patel owed <u>Plaintiffs</u> (as opposed to Sitara Capital Management, LLC) a fiduciary duty.  Mr. Patel was the managing member of Sitara Capital Management, LLC which was the Fund's general partner.  Mr. Patel's duties and obligations ran directly to Sitara Capital Management.  As such, Plaintiffs cannot state a claim against Mr. Patel for breach of fiduciary duty because he did not owe Plaintiffs a fiduciary duty.

Second, the Offering Documents establish the parameters of Defendant's authority to invest the Fund's assets, and accordingly, establish the duties Defendants owed to Plaintiffs. Contrary to Plaintiffs' allegations, the Partnership Agreement and Subscription Agreement contained no prohibition against investing 90% of the Fund's assets in a single security.

Moreover, the Offering Memorandum authorized Defendants to invest outside of the stated guidelines—specifically with respect to the concentration/diversification of the Fund's investments.  (*See* p. 2, *supra*, and Compl. Ex. 1, p. 15).  Thus, Defendants acted within the scope of their authority when they invested 90% of the Fund's capital in Freddie Mac shares in September of 2008.  Moreover, given the capital Patel had at risk in the Fund, he was not in a position to attempt to "hit a home run" at Plaintiffs' expense and "win big for himself" as Plaintiffs argue.  As a matter of law, Defendants could not have breached their fiduciary duties to Plaintiffs because they acted within the authority the Partnership Agreement vested in them.  The court should dismiss Counts XII and XIV.

**VII.    Fraudulent Misrepresentation**

Plaintiffs' claims for fraudulent misrepresentation are subject to Federal Rule of Civil Procedure 9(b).  Other than a blanket incorporation of all previous paragraphs, Plaintiffs do not (1) identify the affirmative misrepresentation that forms the basis of their fraudulent misrepresentation claim, (2) the time, place and manner in which each alleged misrepresentation was communicated to each Plaintiff, and (3) the manner in which each plaintiff relied on the representation (i.e., did the plaintiff purchase based on the misrepresentation or alternatively, did the plaintiff hold their interest based on the misrepresentation).  Defendants are entitled to know

the nature and specifics of each Plaintiffs' fraud clam, and those facts cannot be discerned from the manner in which Plaintiffs have pled their Complaint. Plaintiffs' fraudulent misrepresentation claim fails to comply with the heightened pleading requirements of Rule 9(b) and Count XVI should be dismissed.

**VIII. Plaintiffs' Negligent Misrepresentation Claims are barred by the Economic Loss Doctrine.**

Count XVII of Plaintiffs' Complaint asserts negligence claims for economic damages. Those claims are not viable causes of action because economic damages are not recoverable in tort under both Delaware and Illinois law. Delaware has long-recognized the economic loss doctrine, which bars the recovery of purely economic losses in tort. *Crowell Corp. v. Topkis Construction Co.,* 280 A.2d 730 (1971). The economic loss doctrine was adopted to prohibit claims in tort where overlapping claims based in contract adequately address the injury alleged. *J.W. Walker & Sons, Inc. v. Const. Management Service, Inc.,* 2008 WL 1891385 at *1 (Del. Super. Feb. 28, 2008) ("the economic loss doctrine excludes [plaintiff] from bringing a negligence claim where the damages are based solely on economic losses"). The economic loss doctrine is especially suited to situations where privity of contract exists. *Brasby v. Morris,* 2007 WL 949485 at *7 (Del. Super. March 29, 2007)("the economic loss doctrine precludes Plaintiff from bringing a negligence claim since the damages alleged are only economic losses").

While Delaware law governs Plaintiffs' negligence claim, it is worth noting that Illinois similarly applies the economic loss doctrine and precludes the recovery of purely economic damages in tort. *See Moorman Mfg. Co. v. National Tank Co.,* 435 N.E.2d 443, 450-51 (Ill. 1982) (barring recovery for economic loss on negligent misrepresentation claim). In Illinois, the economic loss doctrine, or *Moorman* Doctrine, prohibits a plaintiff from recovering purely economic damages—damages not based on personal injury or property damage—in tort. *First Midwest. Bank N.A.,* 843 N.E.2d at 338 (Ill. 2006) (dismissing Plaintiff's claims for negligent misrepresentation pursuant to the *Moorman* Doctrine). The *Moorman* Doctrine bars a plaintiff from recovery in negligence for losses which are purely economic, that is, losses that do not involve personal injury or property damage. *Moorman,* 435 N.E. 2d at 451. In essence, the economic loss doctrine denies a remedy in tort to a party whose complaint is rooted in disappointed contractual or commercial expectations.

14

Here, Plaintiffs' negligent misrepresentation claims are the very types of claims that the economic loss doctrine is designed to prevent—purely economic loss stemming from allegedly negligent conduct.  The Court should dismiss Count XVII of Plaintiffs' Complaint pursuant to F.R.C.P. 12(b) because those claims fall squarely within the economic loss doctrine's prohibition on the recovery in negligence for purely economic damages.

## IX.     Plaintiffs' Respondeat Superior Claims Should Be Dismissed

The doctrine of respondeat superior is a mechanism by which a party can hold an employer vicariously liable for the conduct of its employees.  As set forth above, Plaintiffs have not stated a cognizable claim against Mr. Patel.  As such, Plaintiffs' claim for respondent superior cannot stand, and should be dismissed pursuant to F.R.C.P. 12(b)(6).

### CONCLUSION

WHEREFORE, Defendants request that the Court dismiss Plaintiffs' claims with prejudice, and award Defendants their costs and attorneys' fees.

Respectfully submitted,


Defendants Sitara Capital Management, LLC and Rajiv Patel

By: /s/  Daryl M. Schumacher

One of their attorneys


James L. Kopecky
James L. Kopecky, P.C.
190 S. LaSalle St.  Suite 850-A
Chicago, IL  60603
ARDC # 6225359

Daryl M. Schumacher
The Law Offices of Daryl M. Schumacher, P.C.
190 S. LaSalle Street,  Suite 850
Chicago, IL  60603
Phone:  (312) 380-6585
Fax:     (312) 324-0666
ARDC #6244815

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that, on August 21, 2009, he caused true and correct copies of the foregoing *Memorandum in Support of Defendants' Motion to Dismiss* to be served upon all counsel of record via the Court's CM/ECF System:


___*/s/*__Daryl M. Schumacher_____

Daryl M. Schumacher