UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHAILJA GANDHI, REVOCABLE | ) | |
| TRUST (November 6, 2002), | ) | |
| AMIT VYAS, M.D., and | ) | |
| MIHIR "MICK" MAJMUNDAR, M.D., | ) | Case No. 09 C 3141 |
| | ) | |
| Plaintiff, | ) | Judge Joan B. Gottschall |
| v. | ) | |
| | ) | |
| SITARA CAPITAL MANAGEMENT, | ) | |
| LLC, and RAJIV PATEL, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiffs Shailja Gandhi, Revocable Trust (November 6, 2002) (the "Trust"), Amit Vyas, M.D., and Mihir "Mick" Majmundar, M.D., brought this eighteen-count action asserting federal and state causes of action related to the loss of their investment in defendant Sitara Partners, L.P. ("Sitara Partners") which, they allege, was managed by defendants Rajiv Patel and Sitara Capital Management, LLC ("Sitara LLC"). Presently before the court is defendants' motion to dismiss plaintiffs' complaint. For the reasons stated herein, the court grants defendants' motion in part.

## I. PLAINTIFFS' ALLEGATIONS

While plaintiffs' complaint ranges across thirty-seven pages and alleges facts relevant to some counts but not others, their core allegations, taken as true for purposes of the motion to dismiss, are substantially as follows. In 2005 and 2006, plaintiffs invested in Sitara Partners, which had been formed by defendant Patel, with Sitara LLC as its general partner. In addition to being the founder of Sitara Partners, Patel is the principal, managing director, and sole owner of Sitara LLC. According to plaintiffs, Patel

structured both entities to be exempt from various federal and state securities laws. Patel allegedly made various promises to plaintiffs regarding their investment in and his management of Sitara Partners. For example, at some point, Patel promised plaintiffs a diversified portfolio with "quality securities," then, in October 2006, wrote a letter to Sitara Partners' investors, contrasting his operations with those of reckless hedge fund managers. On September 2, 2008, allegedly at odds with his previous representations, Patel fatefully invested 90% of Sitara Partners' assets in common stock of the Federal Home Loan Mortgage Corporation, better known as Freddie Mac. Freddie Mac's stock lost more than 90% of its value, taking Sitara Partners' assets, which lost over three quarters of their value, with it.

## II. LEGAL STANDARD

Defendants' motion initially runs into turbulence when they urge this court to focus on "evidence" and "facts." These arguments misconceive or ignore the purpose of a motion to dismiss, which is to test the sufficiency of allegations, not issues of fact or evidence. On a Rule 12(b)(6) motion, the court must accept as true the allegations of the complaint and draw all reasonable inferences in favor of plaintiff. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (internal citation omitted). Legal conclusions, however, are not entitled to any assumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009).

The Federal Rules of Civil Procedure distinguish between general claims and those asserting fraud or mistake. Generally, to survive a Rule 12(b)(6) motion, "the complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773,

776 (7th Cir. 2007) (quoting Fed. R. Civ. P. 8(a)(2)). The allegations must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff bringing a general claim need not plead particularized facts, but the factual allegations in the complaint must be sufficient to "state a claim to relief that is plausible on its face[.]" *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1940 (citing *Twombly*, 550 U.S. at 556).

Plaintiffs pleading fraud or mistake, by contrast, must plead with particularity the facts constituting that fraud or mistake. *See* Fed. R. Civ. P. 9(b). "This means the who, what, when, where, and how: the first paragraph of any newspaper story." *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). The "who" in a multi-defendant fraud case such as this must itself be pled with particularity: "the complaint should inform each defendant of the nature of his alleged participation in the fraud," to the extent that such information is not uniquely within defendants' possession. *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777-78 & n.5 (7th Cir. 1994) (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (7th Cir. 1987)).

Defendants assert that each plaintiff must allege his reliance on particular statements, an argument that finds support in a strong hint from the Seventh Circuit. *See Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 470-71 (7th Cir. 1999) (noting that "compliance with Rule 9(b) is burdensome" with hundreds of plaintiffs, "[b]ut you cannot get around the requirements of the rule just by joining a lot of separate cases into

one."). The *Ackerman* court's guidance is consistent with its "who, what, when" guidance and with a straightforward reading of Rule 9(b), and so the court will analyze plaintiffs' complaint in this case for specific allegations by each plaintiff in those counts where Rule 9(b) applies.

Finally, plaintiffs have appended multiple exhibits to their complaint. While a Rule 12(b)(6) motion normally tests only the complaint itself, the court properly considers these attachments as well. *Forrest v. Universal Savings Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007).

## III. ANALYSIS

Plaintiffs' complaint spans eighteen counts,[1] each of which defendants want dismissed.[2] The court addresses each in turn.

## A. Count I

In Count I, plaintiffs allege that defendants sold unregistered securities, which is prohibited by § 5 of the Securities Act of 1933, as amended, 15 U.S.C. § 77e (2006). Section 5's general prohibition on the sale of unregistered securities is subject to exemptions outlined in § 4(2) of the Securities Act. 15 U.S.C. § 77d(2). Of particular relevance here, sales "by an issuer not involving any public offering" are exempt from

---

[1] Plaintiffs style their counts, for example, "First Claim for Relief" and "Second Claim for Relief," which the parties in their briefing refer to as "Count I," "Count II," and so on. The court will do the same.

[2] In addition to addressing the individual counts, defendants include in their memorandum in support of their motion to dismiss a discussion of the various attachments to plaintiffs' complaint, which defendants refer to as the Offering Documents. Defendants' essential point is that all of plaintiffs' claims are meritless because their reading of the Offering Documents is flawed. More specifically, defendants assert that in the Offering Documents, they reserved discretion in how they would invest plaintiffs' and others' investments. Therefore, according to defendants, the Offering Documents entitled defendants to make the ultimately disastrous investment in Freddie Mac, and defeat plaintiffs' claims here. It is unclear whether defendants' selection of those portions of the Offering Documents that are most favorable to them or plaintiffs' selection of their favorite passages will carry the day. What is clear is that such a fact-based inquiry is improper at this procedural juncture.

§ 5's general prohibition.  *Id.*  In their motion to dismiss, defendants maintain that their offering was made to thirty-five or fewer investors, and therefore non-public under Regulation D and exempt under § 4(2) from registration requirements.  17 C.F.R. § 230.506(b)(2)(i).[3]

Courts have repeatedly recognized that § 4(2) of the Securities Act, as further elaborated upon in Regulation D, is an affirmative defense to violations of § 5.  *See W. Fed. Corp. v. Erickson*, 739 F.2d 1439, 1442 (9th Cir. 1984); *see also Swenson v. Engelstad*, 626 F.2d 421, 425 (5th Cir. 1980); *ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805, 833 (N.D. Ill. 2008).  An affirmative defense is generally not the basis for a motion to dismiss, unless the allegations of the complaint suffice to establish the affirmative defense.  *See Jones v. Bock*, 549 U.S. 199, 215 (2007); *see also Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008).  Defendants urge that plaintiffs plead facts here sufficient to establish the Regulation D affirmative defense and therefore to merit dismissal of Count I.  While plaintiffs have included in their complaint paragraphs that more resemble legal argument than factual allegations, *see* Compl. ¶¶ 84-87, those paragraphs do not establish the Regulation D affirmative defense.  Specifically, plaintiffs have not alleged the number of investors to whom defendants sold, which is the basis for the Regulation D affirmative defense.  Because the complaint does not reveal whether defendants' conduct was exempt from § 5, the motion to dismiss is denied as to Count I.

---

[3]     The parties are advised that, in any future filings, citations to promulgated regulations shall include citations to the corresponding section of the Code of Federal Regulations, and not simply to the common name of the rule, while citations to enacted statutes shall include citations to the corresponding section of the United States Code.

**B.    Count II**

In Count II, plaintiffs allege that defendants violated § 12(2) of the Securities Act,
enacted at 15 U.S.C. § 77*l*(2), by means of a false and misleading prospectus.  Plaintiffs
bring Count II "in the good faith belief that *Gustafson v. Alloyd Company, Inc.*, 513 U.S.
561 (1995) was wrongly decided."  (Compl. 18 n.1.)  In *Gustafson*, the Court held that a
"prospectus," as used in § 12(2), means only "documents related to *public* offerings by an
issuer or its controlling shareholders."  *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995)
(emphasis added).  Plaintiffs allege the relevant prospectus here was a Confidential
Private Offering Memorandum that they attach to their complaint, a document that they
concede was not a "related to [a] public offering[]."  *Id.*  Neither plaintiffs' belief nor
their cited authority undermines the binding nature of Supreme Court precedent.  Count II
is therefore dismissed.

**C.    Count III**

In Count III, plaintiffs allege fraud in connection with the sale of securities in
violation of § 10(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78a
*et seq.* and Rule 10b-5, codified at 17 C.F.R. § 240.10b-5.  As defendants note:

> To state a valid Rule 10b-5 claim, plaintiff must allege that the defendant
> (1) made a misstatement or omission, (2) of material fact, (3) with
> scienter, (4) in connection with the purchase or sale of securities, (5) upon
> which the plaintiff relied, and (6) that reliance proximately caused
> plaintiff's injuries.

*In re HealthCare Compare Corp. Secs. Litig.*, 75 F.3d 276, 280 (7th Cir. 1996).  Rule
10b-5 claims, like other fraud claims, are subject to the heightened pleading requirements
of Federal Rule of Civil Procedure 9(b).  *See Roots P'ship v. Lands' End, Inc.*, 965 F.2d
1411, 1419 (7th Cir. 1992).  Defendants argue that plaintiffs' Count III fails because
plaintiffs allege that in investing in Sitara Partners they relied on certain statements by

defendants that post-dated plaintiffs' investment. According to defendants, it is impossible that plaintiffs could have invested in reliance on statements not yet made at the time of investment. Plaintiffs, in response, do not contend that the representations of which they complain occurred before their investment (with the limited exception of certain secondary investments made by plaintiff Vyas, which are discussed at greater length within); instead, plaintiffs cite various inapposite cases for the proposition that the allegedly fraudulent representations need not precisely coincide with the securities transaction to be actionable.

Precision is not the issue, though; sequence is. The allegation of reliance on a statement not yet made fails to satisfy the requirement of facial plausibility. *Iqbal*, 129 S. Ct. at 1940. Many courts have held that post-investment misrepresentations are not actionable because the investor could not have made the investment in reliance on representations that the defendant had not yet made. *See Druck Corp. v. Macro Fund Ltd.*, 290 Fed. Appx. 441, 445 (2d Cir. 2008) ("Druck cannot have detrimentally relied on allegedly fraudulent contemporaneous and future statements."); *see also In re Nat'l Century Fin. Enters., Inc., Inv. Litig.*, 580 F. Supp. 2d 630, 638 (S.D. Ohio 2008) ("Lloyds cannot plead the element of reliance as to the June 1, 2001 New Issue Report because it was issued after Lloyds had made its decision to purchase the 2001-1 Series notes on March 23, 2001."); *Beck v. Cantor, Fitzgerald & Co., Inc.*, 621 F. Supp. 1547, 1555 (N.D. Ill. 1985), *abrogated on other grounds as recognized by Flournoy v. Peyson*, 701 F. Supp. 1370, 1375 (N.D. Ill. 1988); *accord O & G Carriers, Inc. v. Smith*, 799 F. Supp. 1528, 1538 (S.D.N.Y. 1992).

Seeking to explain this seemingly intractable problem, plaintiffs argue, "The misrepresentations lulled the Plaintiffs into a false sense of security regarding the trades being made and were clearly false, in that the Fund was not being diversified as represented, which prevented the Plaintiffs from making an informed decision about whether to stay in the Fund." (Resp. 4.) Later, they claim "the Plaintiffs relied upon the false and misleading statements and decided to stay in the Fund because of them." (*Id.*) These statements indicate that plaintiffs relied on defendants' misrepresentations not when making their original investment (which, as described above, would have been impossible), but rather in deciding not to sell their stakes in Sitara Partners. Unfortunately for plaintiffs, it is well-established that retention of a security–that is, the decision not to sell a security–is not actionable under Rule 10b-5. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 754-55 (1975); *see also O'Brien v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 593 F.2d 54, 58-59 (7th Cir. 1979). As the *Blue Chip Stamps* Court described, there are sound reasons based on policy, judicial administration, and legislative history to bar suits arising out of the mere retention of securities, but the primary reason is textual: Rule 10b-5 prohibits conduct only "in connection with the purchase or sale of any security," *see* 17 C.F.R. § 240.10b-5, and retention of a security is neither a purchase nor a sale.

In sum, either plaintiffs allege that they relied on a representation not yet made when they invested or that they relied on those representations later, when they decided to stick with Sitara Partners. Their allegations in Count III are untenable either way.

Plaintiffs Vyas and Majmundar both allege that they made subsequent investments, conceivably after defendants' allegedly fraudulent representations and

therefore conceivably in reliance on those representations.  As described above, fraud claims such as those under Rule 10b-5 must be pled with particularity, and plaintiffs Vyas's and Majmundar's vague claims of subsequent investments fall short of Rule 9(b)'s demands.  *DiLeo*, 901 F.2d at 627.  Nor do Vyas or Majmundar allege with particularity facts giving rise to a strong inference that defendants acted with the requisite scienter as required under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(2).

Count III is dismissed without prejudice.  Plaintiffs are granted leave to re-plead as explained in Section III.E within.

**D.    Count IV**

In Count IV, plaintiffs seek to state a cause of action under Rule 10b-5(c) which, in contrast to Rule 10b-5(b)'s prohibition on fraudulent statements and omissions, prohibits acts, practices, and courses of business which operate as  fraud or deceit upon any person in connection with the purchase or sale of any securities.  *See* 17 C.F.R. § 240.10b-5(b) & (c).  Plaintiffs appear to allege that the act, practice, or course of business in question was Patel's and Sitara LLC's purchase of Freddie Mac stock in September 2008, although plaintiffs allegedly engaged in securities transactions only prior to September 2008.

Plaintiffs' Count IV, therefore, meets the same stumbling block as Count III: plaintiffs could not have relied on a fraudulent action not yet taken.  Plaintiffs urge without citation to authority that reliance is not an element of a claim under Rule 10b-5(c).  That position, while seemingly supported by some courts' recitation of the elements of a Rule 10b-5(c) claim, *see In re Parmalat Secs. Litig.*, 376 F. Supp. 2d 472, 491-92

(S.D.N.Y. 2005), is undermined by other courts' inclusion of reliance as an element. *See N.Y. City Employees' Ret. Sys. v. Berry*, 616 F. Supp. 2d 987, 996 (N.D. Cal. 2009); *see also S.E.C. v. Simpson Capital Mgmt., Inc.*, 586 F. Supp. 2d 196, 201 (S.D.N.Y. 2008); *In re Global Crossing, Ltd. Secs. Litig.*, 322 F. Supp. 2d 319, 336 (S.D.N.Y. 2004).

Plaintiffs' contention is unpersuasive, particularly given that subsection (c) of Rule 10b-5, like subsection (b), is primarily concerned with fraud, of which reliance is an element. Even if reliance is not explicitly an element of a Rule 10b-5(c) action, plaintiffs must somehow link the deceptive conduct to the claimed harm and to a relevant securities transaction. *Accord Latigo Ventures v. Laventhol & Horwath*, 875 F.2d 1322, 1326 (7th Cir. 1989). In Count IV, plaintiffs have failed to allege a connection between defendants' deceptive conduct and their claimed harm, and have likewise failed to allege how the fraud is connected to a securities transaction.

As explained within, plaintiffs' Count IV likewise fails because it does not meet Federal Rule of Civil Procedure 9(b)'s pleading standards; the particulars of how each plaintiff was defrauded and how each defendant committed fraud are not apparent. Count IV is therefore dismissed without prejudice as explained in Section III.E.

E.      **Re-pleading Counts III and IV**

Counts III and IV are dismissed without prejudice. Plaintiffs allege that Patel made several representations that they do not date in their complaint. (*See* Compl. ¶¶ 46-50, 78A, 94.) Defendants date these representations in their briefing in an effort to show that all of their alleged representations post-dated plaintiffs' investments. (*See* Mem. 5-7.) Plaintiffs do not contest the dates put forth by defendants, nor do they point to any pre-investment representations or actions on which they allegedly relied. It appears, but

is not clear, that all of the alleged representations post-date plaintiffs' original investments, and are therefore not actionable under relevant securities laws. If the representations pre-dated the investments, plaintiffs do not allege as much, and must plead with greater particularity. *See* Fed. R. Civ. P. 9(b).

Therefore, plaintiffs are granted leave to re-plead Counts III and IV as follows. Plaintiffs Vyas and Majmundar may attempt to re-plead causes of action arising from their subsequent investments to the extent that those investments post-dated the representations or actions on which they allegedly relied. All plaintiffs may attempt to re-plead Counts III and IV *if* plaintiffs can allege *with particularity* that in making their initial investments, they relied on representations that had already been made at the time of the relevant investment. In pleading with particularity, *each* plaintiff must allege the fraud allegedly perpetrated by *each* defendant, including the date and amount of that plaintiff's individual investments, any representations or actions then in existence on which he relied, and the date and other factual details concerning that representation or action. Moreover, in re-pleading Count III, each plaintiff must allege facts that otherwise satisfy the pleading requirements of the PSLRA.

Any attempt by plaintiffs to re-plead also should be re-formatted. Plaintiffs have set forth nearly eighty paragraphs of general allegations, which they reincorporate into each count. The counts themselves are skeletal recitations of legal conclusions. While the parties have not briefed the issue, this blanket incorporation of dozens of paragraphs strikes the court as ill-suited to satisfy the particular pleading standards for fraud claims under Federal Rule of Civil Procedure 9(b). Plaintiffs are therefore directed to incorporate in any re-pled fraud count, including Counts III and IV, *specific* paragraphs

that, in their contention, state a claim, or to simply state those paragraphs in the relevant count without incorporation.

## F.    Counts V-X

In Counts V through X of their complaint, plaintiffs bring claims under the Illinois Securities Law.  Despite defendants' apparent confidence that the shortcomings of plaintiffs' Rule 10b-5 allegations likewise doom their Illinois Securities Law allegations, an examination of each state securities law count is necessary.

The first question is whether defendants' argument that plaintiffs could not have relied on post-investment representations holds as true for their state-law claims as for their federal claims.  Plaintiffs' Counts VI, VII, VIII, and X are based on subsections (F), (G), (I), and (J), respectively of § 12 of the Illinois Securities Law.  Subsections (F), (G), and (I) largely mirror the fraud provisions of the federal Rule 10b-5, *compare* 815 Ill. Comp. Stat. § 5/12(F), (G), (I) *and* 17 C.F.R. § 240.10b-5, while subsection (J) penalizes investment advisors who defraud their clients.  *See* 815 Ill. Comp. Stat. § 5/12(J).  In each of these counts, plaintiffs seek to state a claim for fraud.  Plaintiffs also attempt to state a claim for fraud in Count V, based on § 12(A) of the Illinois Securities Law; while that subsection does not prohibit fraud *per se*, *id.* § 5/12(A), plaintiffs repeatedly allege in Count V that defendants "defrauded and deceived" them.

Reasonable reliance is an element of fraud claims arising under the Illinois Securities Law.  *See Tirapelli v. Advanced Equities, Inc.*, 813 N.E.2d 1138, 1142 (Ill. App. Ct. 2004).  Plaintiffs cite no case law indicating that their theory of post-investment reliance is any more tenable under these state-law fraud claims than under their Rule 10b-5 claims.  In inquiring into the reasonableness of a party's alleged reliance, the court

"must consider all of the facts that the party know, as well as those facts that the party could have discovered through the exercise of ordinary prudence." *Id.* Plaintiffs do not explain how they could have discovered defendants' not-yet-made representations at the time of their investment. These counts are therefore dismissed to the extent plaintiffs allege that, in making their initial investments, they relied on post-investment representations.

The court notes that, unlike Rule 10b-5 and subsections (A), (F), (G), and (I) of the Illinois Securities Law, subsection (J) of the Illinois law does not require a connection to the purchase or sale of securities. *See* 815 Ill. Comp. Stat. § 5/12(J). Rather, subsection (J) penalizes fraudulent investment advisors regardless of their connection to securities transactions. *Id.* Therefore, in Count X, which is premised on subsection (J), plaintiffs may have a claim that they relied on post-investment representations. However, plaintiffs allege that the actionable fraud under subsection (J) occurred in connection with their investment, which pre-dated all of defendants' representations. (*See* Compl. ¶ 131.) Therefore, to the extent that plaintiffs have attempted to state a claim for investor fraud under subsection (J) for defendants' actions after the initial investment, their Count X is dismissed without prejudice.

Counts V through VIII and X likewise fail Rule 9(b)'s particularity requirements. Whether a claim contains averments of fraud and is therefore subject to Rule 9(b)'s heightened pleading requirements depends not on the claim's label, but on its factual substance. *See Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). In each of Counts V through VIII and X, plaintiffs set forth claims with both a label and factual substance indicating fraud. However, to the extent that plaintiffs plead

that the representations on which they relied predated their investments, they have failed to make such allegations with particularity. *See DiLeo*, 901 F.2d at 627. These claims, to the extent they arise from representations that pre-date plaintiffs' investments, are therefore dismissed without prejudice.

Should they attempt to re-plead Counts V through VIII and X, plaintiffs must do so with particularity. Each plaintiff must make specific allegations regarding alleged frauds perpetrated by each defendant, as explained in sections II and III.E above. While fraud claims premised on actions taken in reliance on not-yet-made allegations are not actionable, plaintiffs may be able to identify fraudulent actions that pre-date their investments or, in the case of Count X, actions that pre-date their reliance. If they are so able, they must identify and date those actions in their amended complaint. Plaintiffs are likewise advised that should they choose to re-plead, they must re-format their complaint as explained in section III.E above.

Plaintiffs' final Illinois Securities Law claim, Count IX, alleges violations of § 12(C), which makes it illegal to act as an unregistered investment advisor. 815 Ill. Comp. Stat. § 5.12(C). Nothing about plaintiffs' Count IX suggests that it sounds in fraud, rendering defendants' blanket attack on plaintiffs' state-law fraud claims inapt here. Specifically, defendants have not explained whether reliance is an element of a claim under § 12(C) (it does not appear to be) or whether plaintiffs' Count IX in particular is subject to heightened pleading requirements. As defendants asserted only these two bases for dismissal of all of plaintiffs' claims under the Illinois Securities Law, dismissal of Count IX count is denied.

**G.    Count XI**

In Count XI, plaintiffs allege violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 Ill. Comp. Stat. § 505/1 *et seq.*  Defendants assert that a choice-of-law clause in the Sitara Partners' Limited Partnership Agreement mandates that Delaware law governs this dispute, meaning that plaintiffs' claim predicated on an Illinois statute must be dismissed.  That choice-of-law clause at issue states that "the terms and provisions hereof shall be construed under the laws of the state of Delaware."  (Compl., Ex. 4 ¶ 5.2.)  The clause says nothing about fraud claims, and defendants point to no "term[] [or] provision[]" of the contract pertaining to consumer fraud claims.

Defendants urge that the choice-of-law clause nevertheless governs this claim because plaintiffs' tort claim as alleged depends on the contract.  *See Birnberg v. Milk Street Residential Assoc. Ltd.*, Nos. 02 C 9878, 02 C 3436, 2003 WL 151929, at *14 (N.D. Ill. Jan. 21, 2003).  In *Birnberg*, the court noted that a choice-of-law clause governs a tort claim where the tort claim depends on the contract in which the choice-of-law clause is found.  *Id.*  The court explained that such a tort claim "depends" on the contract when: "(1) the [claim] alleges a wrong based upon interpretation and construction of the contract; (2) the tort claims [are] closely related to the parties' contractual relationship; and (3) the tort claim could not exist without the contractual agreement which contains the choice-of-law provision."  *Id.* (citations and internal quotation marks omitted).  In *Birnberg*, the court found that plaintiffs' claim under the Consumer Fraud Act did not depend on the contract at issue, and therefore was not governed by the choice-of-law clause.  *Id.*

Here, plaintiffs' Consumer Fraud Act fraud claim does not appear to depend on the existence of a contract; rather, it, like the *Birnberg* statutory fraud claim, appears to depend on representations outside the contract. However, plaintiffs' blanket reincorporation of their previous allegations makes that determination uncertain. Moreover, such a reincorporation, as with plaintiffs' other fraud claims, fails to satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b). Therefore, plaintiffs' Count XI is dismissed without prejudice, and plaintiffs may re-plead with greater particularity.

**H.** **Count XII**

In Count XII, plaintiffs Vyas and Majmundar allege that defendants owed them a fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1104. Vyas and Majmundar allege that defendants owed them fiduciary duties because plaintiffs invested in Sitara Partners through qualified ERISA retirement plans. To state a claim for a violation of fiduciary duty under ERISA, the plaintiff must allege "(1) that the defendants are plan fiduciaries; (2) that the defendants breached their fiduciary duties; and (3) that the breach caused harm to the plaintiff." *See Jenkins v. Yager*, 444 F.3d 916, 924 (7th Cir. 2006) (citation and internal quotation marks omitted). Certainly, trustees and administrators of plans are fiduciaries under ERISA, *see id.* (citing 29 U.S.C. § 1002(21)(A)), but Vyas and Majmundar do not allege that defendants had such a role in their ERISA qualified plans.

Rather, Vyas and Majmundar allege facts suggesting that defendants controlled and provided investment advice to Sitara Partners. Sitara Partners is not itself alleged to be an ERISA qualified plan. However, an ERISA plan's equity investment in another

entity (here, Sitara Partners), which investment is neither a publicly-offered security nor a security issued by a registered investment company, imposes a fiduciary duty on persons who control or advise the entity. *See* 29 C.F.R. § 2510.3-101(a). In other words, if Vyas's and Majmundar's ERISA plans made equity investments in Sitara Partners, then Sitara LLC and Patel, whom plaintiffs allege controlled and advised the partnership, are fiduciaries of the plans themselves, despite bearing no direct relationship to the plans.

Taking plaintiffs' allegations as true, Vyas's and Majmundar's ERISA-qualified retirement plans invested in Sitara Partners, and Patel and Sitara LLC controlled and provided advice for a fee to Sitara Partners. (While defendants argue that Patel's only fiduciary duty was to Sitara LLC, plaintiffs' allegations and the documents attached to the complaint suggest that Patel controlled Sitara Partners and offered advice to it not solely as an agent of Sitara LLC, but also by virtue of a direct relationship to Sitara Partners.) There are no allegations suggesting that shares in Sitara Partners were either publicly offered securities (indeed, defendants deny as much in seeking to dismiss Count I) or securities offered by a registered investment company. Therefore, Patel and Sitara LLC owed Vyas's and Majmundar's plans fiduciary duties *if* those plans made equity investments in Sitara Partners. Plaintiffs repeatedly allege that they invested in Sitara Partners, but do not describe the nature of their alleged investment. Given that Sitara Partners is allegedly a limited partnership, it seems likely that any investment was an equity investment, but that much is not clear.

Two additional issues, not briefed by the parties, linger. The first issue is plaintiffs' relationship to the ERISA plans at issue. Presumably, Vyas and Majmundar are the beneficiaries of those plans; if so, they would be authorized to bring an action for

breach of a fiduciary duty owed to the plans. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985). But the complaint does not reveal the nature of those plaintiffs' relationships to their plans, and the court will not presume as much.

A somewhat larger issue applicable to all counts is whether plaintiffs Vyas and Majmundar are proper plaintiffs in their individual capacities, as suggested by their original complaint, or are only proper plaintiffs by virtue of their relationship to their ERISA plans. If Vyas and Majmundar made investments in Sitara Partners only through their ERISA plans, then it would stand to reason that their rights are not individual, but derivative of those plans. If so, their factual allegations must state as much.

Plaintiffs' Count XII is therefore dismissed without prejudice; if plaintiffs choose to re-plead, they must make clear in such pleadings whether their plans' investments in Sitara Partners are equity investments, by what authority they seek to recover for breach of a fiduciary duty owed to their plans, and whether, and for which counts, they bring suit on behalf of their plans.

## I.      Count XIII

In Count XIII, plaintiffs bring a state-law breach of contract claim for an alleged breach of the Limited Partnership Agreement. In their factual allegations describing the alleged breach, however, plaintiffs do not refer to any provision of the Limited Partnership Agreement. Although plaintiffs are not required in bringing their breach of contract claim to plead facts with particularity, *see* Fed. R. Civ. P. 9(b), they must at minimum allege a short and plain statement of the claim showing that they are entitled to relief. *Id.* 8(a)(2). By not identifying in their complaint the provision of the Limited Partnership Agreement allegedly breached, plaintiffs fail to satisfy this low threshold.

Plaintiffs attempt to remedy their complaint in briefing by pointing to various contractual provisions not mentioned in their complaint. Argument in briefs, though, is no substitute for allegations in pleadings. Count XIII is dismissed without prejudice.

## J.     Count XIV

In Count XIV, plaintiffs bring a state-law claim for breach of fiduciary duty, alleging that defendants breached fiduciary duties they owed to Sitara Partners. Defendants argue that, whatever duty they owed to Sitara Partners, they owed none to plaintiffs. As with plaintiffs' ERISA claims, the nature of plaintiffs' alleged interest in Sitara Partners is unclear. If they allege that they are limited partners, then they may have a derivative claim on behalf of the partnership. *See Caparos v. Morton*, 845 N.E.2d 773, 782 (Ill. App. Ct. 2006). However, unless plaintiffs suffered some injury separate from the other partners in Sitara Partners, they likely do not have an individual claim for breach of fiduciary duty. *Id.* In any case, because plaintiffs have inadequately pled the nature of their interest in Sitara Partners, the complaint does not reveal whether their claim is more properly styled as a derivative or a direct claim. Because plaintiffs may be able to clarify this issue by re-pleading, Count XIV is dismissed without prejudice.

## K.     Count XV

In Count XV, plaintiffs attempt to bring an Illinois common-law fraud in the inducement claim. As with plaintiffs' previous fraud claims, defendants protest that plaintiffs claim to have relied on post-investment representations, and that plaintiffs have failed to plead fraud with the requisite particularity. Like their previous fraud claims, plaintiffs' claim that post-investment representations induced them to invest is not actionable. *See Tirapelli*, 813 N.E.2d at 1143 (requiring inquiry as to what plaintiff knew

or could have known in evaluating reliance). However, in Count XV, plaintiffs specifically allege that plaintiffs were induced to "remain" invested in Sitara Partners by defendants' misrepresentations; while this allegation was insufficient under securities law, which requires a connection with a securities transaction, plaintiffs' state-law fraud in the inducement claim has no such requirement.

Nevertheless, plaintiffs' Count XV is dismissed without prejudice. In Count XV, plaintiffs attempt to allege fraud, making that count subject to heightened pleading standards. *See Borsellino*, 477 F.3d at 507. As with their previous, securities-law fraud counts, plaintiffs have failed to plead their common-law fraud in the inducement claim with the requisite particularity, instead attempting to incorporate a wide range of allegations. *See DiLeo*, 901 F.2d at 627. As with their other fraud claims, plaintiffs are allowed leave to re-plead this claim with specific, detailed allegations regarding relevant representations, acts in reliance on those representations and damages suffered as a result. As explained above, any re-pled allegations must be specific to each defendant and each plaintiff.

**L.     Count XVI**

In Count XVI, plaintiffs assert a state-law fraudulent misrepresentation claim. Their claim consists of three paragraphs, which include a general reincorporation of the previous 159 paragraphs, an allegation that the defendants engaged in fraudulent misrepresentation as set forth previously in the complaint, and a prayer for relief. This fraud claim contains the same two-fold shortcomings as its predecessors. First, justifiable reliance is as much as an element of fraudulent misrepresentation claims as it is of other fraud claims. *See Doe v. Dilling*, 888 N.E.2d 24, 35 (Ill. 2008). Those of defendants'

representations and plaintiffs' acts in reliance to which plaintiffs assign dates in their current complaint reveal that the representations post-date the acts purportedly in reliance, which would be impossible (and therefore unjustifiable). To the extent that plaintiffs allege that defendants' representations pre-dated their reliance, their complaint fails to plead facts with particularity as required by Federal Rule of Civil Procedure 9(b). Like plaintiffs' fraud in the inducement claim, their fraudulent misrepresentation claim does not depend on a securities transaction, and so post-investment acts in reliance may be actionable, depending on the facts alleged.

Consistent with plaintiffs' claim in Count XV, Count XVI is dismissed without prejudice.

## M.    Count XVII

In Count XVII, plaintiffs seek recovery for defendants' allegedly negligent misrepresentations. Generally, claims for economic damages styled as negligent misrepresentation claims are barred by the economic loss doctrine, which precludes the recovery of purely economic damages in tort claims. *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 450-52 (Ill. 1982); *see also First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 336 (Ill. 2006). The logic of this bar, known as the *Moorman* doctrine, is that parties in privity of contract are better suited to litigate liability issues under contract law. The *Moorman* doctrine has an exception allowing claims against persons in the business of supplying information to others for guidance in their business dealings, *see Menard, Inc. v. U.S. Equities Dev., Inc.*, No. 01 C 7142, 2002 WL 314571, at *4-*5 (N.D. Ill. Feb. 28, 2002), an exception that plaintiffs urge applies here. Yet, as defendants accurately point out, that exception to the *Moorman* doctrine

applies to entities in the business of supplying information to others for their business dealings with third parties, not for dealings with the supplier of information. *See Rankow v. First Chi. Corp.*, 870 F.2d 356, 362-63 (7th Cir. 1989); *accord Knox College v. Celotex Corp.*, 453 N.E.2d 8, 11 (Ill. App. Ct. 1983); *Rozny v. Marnul*, 250 N.E.2d 656 (Ill. 1969). Here, plaintiffs do not set forth facts suggesting that defendants supplied them with information in their dealings with anyone other than defendants themselves, rendering that exception to the *Moorman* doctrine inapplicable. Count XVII is dismissed.

**N.       Count XVIII**

In Count XVIII, plaintiffs seek to hold Sitara LLC liable for Patel's actions under the theory of *respondeat superior*. Defendants premised this request for dismissal of this count on dismissal of all previous counts. The court dismisses Count XVIII insofar as it dismissed the previous counts.

### IV.    CONCLUSION

For the reasons stated above, defendants' motion to dismiss is granted in part.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: February 9, 2010