UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHAILJA GANDHI REVOCABLE TRUST (NOVEMBER 6, 2002), et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Judge Joan B. Gottschall |
| SITARA CAPITAL MANAGEMENT, LLC, and RAJIV PATEL, | ) No. 09 C 3141 ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION & ORDER**

Plaintiffs Shailja Gandhi Revocable Trust; Amit D. Vyas, M.D., and Trupti Vyas ("the Vyases"); and Mick and Mita Majmundar ("the Majmundars") sued Rajiv Patel and Sitara Capital Management, LLC ("Sitara Capital") for violations of the Federal Securities Act of 1933 and the Illinois Securities Law of 1953. The Vyases and Majmundars also sued on behalf of their profit-sharing plans for violations of the Employee Retirement Income Security Act ("ERISA").[1] Plaintiffs' claims arise from their participation in Sitara Partners, LP ("Sitara Partners" or "the Fund"), a limited partnership in which Defendants managed their money, the vast majority of which was lost in September 2008, when the single stock in which Defendants had invested the partnership funds crashed. Now before the court are Defendants' motion for summary judgment on the three remaining counts of Plaintiffs' Second Amended Complaint and Plaintiffs' motion for leave to file a Third Amended Complaint. The court concludes that, construing the evidence in Plaintiffs' favor, Plaintiffs have failed to establish a genuine issue of

---

[1] Plaintiffs' Second Amended Complaint included several other claims previously dismissed by the court. (*See* Mem. Op. and Order Feb. 11, 2010, ECF No. 23; Mem. Op. and Order February 25, 2011, ECF No. 52.)

material fact as to whether Defendants violated federal and Illinois securities laws, and the Vyases and Majmundars have not established a question of fact as to the ERISA claim. Defendants' motion for summary judgment is granted. The court also concludes that further amendment of Plaintiffs' complaint would be futile and denies Plaintiffs leave to file a Third Amended Complaint.

## I. BACKGROUND

The following facts are undisputed, except where otherwise indicated.[2] Sitara Partners and Sitara Capital were Delaware entities formed in April 2005. Sitara Capital was the general partner of Sitara Partners. Rajiv Patel was the principal and managing director of Sitara Capital, and Sitara Capital was the investment advisor to Sitara Partners.

**A. Creation of the Sitara Entities**

Prior to forming the Sitara entities, Patel operated BIT Software, an Internet company that provided companies with on-line catalog and e-commerce software and services. BIT Software was renamed Maestro Commerce and subsequently sold. (Defs.' SOF Ex. 2 ("Patel Dep.") 104:19-20, ECF No. 68.) Patel's 50 percent interest in the sale of Maestro Commerce yielded $9 million, including $3 million in cash and the rest in shares in a South African company known as GoldMine Software (now FrontRange Solutions).

In 1999, Patel opened a personal account to trade securities. He gave securities advice to his father-in-law and two close friends and achieved some success. Patel then founded Sitara Capital and Sitara Partners. Between 2005 and 2008, Patel offered and sold limited partnership

---

[2] Plaintiffs dispute ¶¶ 16, 17, 22, and 25 of Defendants' Rule 56.1 Statement of Facts ("SOF") on the sole ground that they are "self-serving." "'Self-serving' deposition testimony may satisfy a party's evidentiary burden on summary judgment" as long as it is based on personal knowledge and on observation rather than mere speculation. *Whitlock v. Brown*, 596 F.3d 406, 411-12 (7th Cir. 2010) (internal quotation marks omitted). Because the evidence cited in support of the disputed paragraphs consists of Patel's deposition testimony about his past actions and state of mind, it is based on personal knowledge and is not speculation. But on summary judgment, the court makes no credibility determinations and looks to the record as a whole, drawing all reasonable inferences for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

2

interests in Sitara Partners to investors, including Plaintiffs, to raise capital to trade securities. The majority of investors in Sitara Partners were Patel's family members and close friends. Fewer than twenty non-accredited investor households purchased interests in Sitara Partners; Patel did not keep track of the number of individual investors who participated. (Patel Dep. 40:4-13.) Patel and Sitara Capital did not provide investment advisory services directly to Plaintiffs, only to Sitara Partners.[3]

In soliciting Plaintiffs' initial and subsequent investments in Sitara Partners, Patel told them that his own capital would be invested in the Fund. Specifically, in Sitara Partners' Confidential Private Offering Memorandum ("CPOM"), Patel represented: "Mr. Patel intends to contribute no less than one hundred thousand dollars to the partnership." (Defs.' SOF Ex. 6 ("CPOM"), ECF No. 68.) Patel did not invest any of his own money at the inception of Sitara Partners and did not tell Plaintiffs that he had not done so. He did, however, accumulate management and incentive fees which were rolled over into the Fund, which he claims totaled between $100,000 and $500,000. Patel claims that he was entitled to withdraw that money from the Fund at will. (Patel Dep. 58:25–59:14.) Plaintiffs contend that this was Patel's only contribution to the Fund, but Patel states that his 0.25 percent management fee did not cover the full operating costs of Sitara Capital, and that he made up some of the cost of running the Fund with his private investment account. (*Id*. at 99:14-23.) Plaintiffs claim that "Mr. Patel invested less of his own money than he led us to believe" he would before they invested. (Pls.' App'x Ex. 1 ("Gandhi Interrog. Resp.") 5, ECF No. 93.)

---

[3] This statement is drawn from Defendants' SOF ¶ 3. Plaintiffs respond by saying they "were members of Sitara Partners and each Plaintiff individually granted discretionary authority over their invested funds to Patel and Sitara. Plaintiffs do not dispute that they individually did not have independent advisory accounts with Patel or Sitara." (Plaintiffs' Resp. to Defs.' SOF ¶ 3, ECF No. 77.)

3

Throughout the Fund's operating history, Patel maintained a personal account with between $1 and $2 million, and a retirement account with between $50,000 and $100,000, with which he executed trades identical to those he executed on behalf of Sitara Partners. Patel claims that he maintained his personal funds in separate accounts, mirroring the Fund's trading activity, so that he could easily withdraw funds for his family's expenses.[4]

At all times, less than 25 percent of the funds held by Sitara Partners were in ERISA-covered benefit plans. Sitara Partners declined investments to avoid increasing the percentage of ERISA-covered assets beyond 25 percent. The CPOM states that "[i]f the assets of the Partnership [are] regarded as 'plan assets' of an ERISA Plan, an IRA, or a Keogh Plan . . . the General Partner would be a 'fiduciary' (as defined in ERISA) with respect to such Plans and would be subject to the obligations and liabilities imposed on fiduciaries by ERISA." (CPOM 11.) It further explains that Sitara Capital "intends to limit the participation in the Partnership by Benefit Plan investors to the extent necessary so that participation by Benefit Plan investors will not be 'significant' within the meaning of" Department of Labor regulations such that the Fund would have "to comply with the applicable provisions of ERISA." (*Id*. at 11-12.)

**B. Defendants' Investment Strategy**

Sitara Partners' trading strategy focused on concentrated holdings, whereby the Fund would hold large positions of a small number of securities.[5] In his deposition, Patel testified that "there is no rule of thumb as to whether" a concentrated fund will hold "two, five, ten or twenty

---

[4] This sentence and the preceding sentence, drawn from Defendants' SOFs ¶¶ 12 and 13, are disputed by Plaintiffs. But Plaintiffs' citation to the record in their response only pertains to the question of whether Patel invested $100,000 of his own money in Sitara Partners. Whether Patel invested that money in Sitara Partners or not has no bearing on the investments he made with his personal investment accounts.

[5] Plaintiffs dispute this statement, drawn from Defendants' SOF ¶ 11, but their citations to the record do not establish that this was not the Fund's strategy, only that Plaintiffs did not believe, did not understand, or were not told that this was the Fund's strategy.

or thirty" securities, but that Sitara Partners "typically held ten or fewer and in some cases twenty or fewer stocks at any given time." (Patel Dep. 97:6-7, 50:11-12.) The CPOM states that "[i]t is not a goal of the Partnership to maintain a highly diversified portfolio," that the Fund practices a "philosophy of concentrating our investments," which will be "concentrated in less than twenty positions," and that Sitara Capital "may feel that it is in the best interest of the Partnership to effect a transaction outside of these guidelines," which "may represent a special risk in that the level of diversification of the Partnership's portfolio may be lower than a well-diversified portfolio." (CPOM 13-15.) The CPOM further explains:

- [T]he Partnership Agreement imposes no limits on the concentration of the Partnership's investments in particular securities, industries, or sectors and at times the Partnership may hold a relatively small number of securities positions, each representing a relatively large portion of the Partnership's assets.

- The Partnership Agreement does not limit the amount of the Partnership's capital that may be committed to any single investment, industry, or sector.

(*Id*. at 15, 30.) The CPOM articulated the broad and absolute discretion with which Defendants could make investment decisions as follows:

- All investment decisions will be made exclusively by the General Partner, in its sole and absolute discretion.

- The General Partner will be free to pursue such investment strategies, as it deems fit or appropriate at any given time.

- Moreover, the General Partner may change, in its absolute discretion, the investment objectives and policies of the Partnership and there can be no assurance that it will not exercise such power.

- The Limited Partnership Agreement gives the General Partner broad discretion to expand, revise or contract the Partnership's business without the consent of the Limited Partners. Thus, the investment strategies of the General Partner may be altered without prior approval by, or notice to, the Limited Partners if the General Partner determines that such change is in the best interests of the Partnership.

5

(*Id.* at 12-13, 31.)  In Sitara Partners' January 2007 report, Patel told Plaintiffs that "Sitara Partners, LP has a portfolio that is concentrated in about ten to fifteen securities [mostly stocks, sometimes bonds] at any given time."  (Pls.' App'x Ex. 4 ("2007 Letter") 2, ECF No. 96.)  Patel stated that "[y]ou may already know that we make only a few investments a year," and that the Fund "believe[s] that our level of concentration is key to our ability to outperform the markets. . . . You should understand that our concentrated portfolio will almost certainly have more volatility than the market."  (*Id.* at 2; Pls.' Compl. Ex. 2 ("2007 Letter") 33, ECF No. 58.)

The parties dispute whether Plaintiffs were familiar with Patel's philosophy in managing their retirement assets.  Patel testified in his deposition that he reasonably believed each purchaser to be capable of evaluating the merits and risks of investment in the Fund.  At least some of the Plaintiffs met one-on-one with Patel before investing.  (Patel Dep. 23:20-24:16.)  Manish Gandhi, trustee of the Shailja Gandhi Revocable Trust, stated in his interrogatory responses that after meeting with Patel and reviewing documents prepared by Patel, he had the impression that "the fund was very well diversified so I didn't feel there was a huge risk."  (Gandhi Interrog. Resp. 2.)  Mick Majmundar stated that, after meeting with Patel multiple times and reviewing the documents Patel provided, he understood that the Fund chose "a limited number of companies to follow," but also believed there was "diversification of investments."  (Pls.' App'x Ex. 2 ("Majmundar Interrog. Resp.") 2, ECF No. 94.)  The Vyases' interrogatory responses indicate that the documents they received from Patel led them to believe that the Fund would hold "a limited number of quality companies" but also pursue "diversification," and that in their meetings with Patel, he "advised that the funds were doing well and [were] well diversified."  (*Id.* Ex. 3 ("Vyas Interrog. Resp.") 2, 4, ECF No. 95.)

**C. Collapse of the Fund**

According to Patel, the Fund was successful for three years but performed poorly between November 2007 and August 2008, during which time its value dropped from over $14 million to approximately $7.5 million. In April 2008, Patel wrote a letter to Plaintiffs telling them that the downturn in the markets was caused by a combination of problems in the housing market and the credit markets, which he expected to "cause ripples throughout the world." A month later, in May 2008, Patel explained the poor performance of the Fund in the past six months by stating that "while he had expected housing market declines, [he] had underestimated the extent of the credit/liquidity crisis."

On September 2, 2008, Patel invested over 90 percent of Sitara Partners' capital in Freddie Mac common stock. The share price of the stock had dropped precipitously from January 2008 to August 2008. In late August 2008, the credit rating service Moody's downgraded Freddie Mac's debt from A1 to Baa3, the lowest investment credit rating. In Defendants' Answer, Patel admits that he was aware of the state of Freddie Mac's business, and of the state of the housing and credit markets generally.

Later that same day, September 2, 2008, after new information was released to the market regarding Freddie Mac, Patel sold all of the Fund's holdings in Freddie Mac. In the hours between Patel's purchase and sale of the Freddie Mac stock, the stock's share price fell from $5.095 to $4.530/share, costing Sitara Partners $850,588.50. The next day, September 3, 2008, the price of Freddie Mac common stock rebounded to $5.335/share. On September 3, 2008, Patel repurchased as many shares of Freddie Mac common stock as Sitara Partners could afford. In the days that followed, Freddie Mac's share price fell again. Ultimately, all the money the Fund had invested in Freddie Mac stock was lost on September 8, 2008, as a result of a massive

single-day decline in the stock price. Sitara Partners suffered a devastating loss and was wound down in September 2008.

In his deposition, Patel testified that he did significant due diligence before investing so much of the Fund's money and his own money in Freddie Mac stock, and that he decided to do so only after investigating and evaluating the investment and exercising his independent judgment.[6] He further testified that, when he sold Sitara Partners' entire holdings in Freddie Mac common stock on September 2, 2008, he did so in order to review the market information without having an interest in the investment that might cloud his judgment or cause him to view the position through "rose-colored glasses." According to Patel, after he re-evaluated the information that existed at the time, he was convinced the investment was a good one and therefore repurchased shares of Freddie Mac. During the period between September 2, 2008 and September 8, 2008, Patel testified, he made corresponding trades in Freddie Mac with his personal and retirement portfolios, which contained over $1 million. Because of this, according to Patel, when Sitara Partners suffered its devastating loss on September 8, he personally suffered a corresponding loss. Patel testified that he believed he was acting in the best interests of Sitara Capital at all times, and that it, in turn, was acting in the best interests of the Fund.

## II. LEGAL STANDARD

Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009). The court ruling on the motion construes all facts and makes all reasonable inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 248. Summary judgment is warranted when the nonmoving party is

---

[6] This sentence, drawn from Defendants' SOF ¶ 28, is disputed by Plaintiffs. But Plaintiffs fail to explain how their citations to paragraphs of Defendants' Answer, pertaining to Patel's goals and investment ideas for Sitara Partners, contradict Defendants' SOF. Thus, the statement is deemed admitted.

8

unable to establish the existence of an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

### III. ANALYSIS

### A. 1933 Act Claim (Count I)

Plaintiffs bring a claim under § 5 of the Securities Act of 1933, 15 U.S.C. § 77e, which requires the registration of securities prior to their offer or sale. Defendants argue that they are exempt from such registration under 17 C.F.R. § 230.506(a), which exempts from registration "offers and sales of securities" that satisfy both the general conditions contained in 17 C.F.R. §§ 230.501 and 230.502, and the specific conditions that there be "no more than 35 purchasers" and that "[e]ach purchaser who is not an accredited investor . . . has such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of the prospective investment, or the issuer reasonably believes . . . that such purchaser comes within this description." The number of purchasers under this section is calculated according to § 230.501(e), which excludes in pertinent part "[a]ny relative, spouse or relative of the spouse of a purchaser who has the same primary residence as the purchaser" and "[a]ny accredited investor." The general conditions of § 230.502 require the offeror to supply any unaccredited purchaser with certain disclosures about the offering and the offeror, "to the extent material to an understanding of the issuer, its business and the securities being offered."

Plaintiffs' 1933 Act claim depends on three issues: (1) whether Sitara Partners had less than 35 purchasers, as defined by § 230.501(e); (2) whether Patel reasonably believed that the purchasers who were not accredited investors had the knowledge and experience in financial and business matters to be capable of evaluating the prospective investment; and (3) whether Sitara

9

Partners was in compliance with the general conditions of § 230.502, which required Sitara Partners to supply unaccredited purchasers with the required disclosures.

First, there is no genuine issue of material fact as to the number of purchasers, as defined by § 230.501(e). Patel testified in his deposition that Sitara Partners had fewer than 20 unaccredited investor households, which falls well below the threshold of 35, and Plaintiffs have offered no evidence to dispute that. Instead, they attempt to take issue with Patel's count by pointing out that he knows only the number of households, not individuals. But the distinction is irrelevant: § 230.501(e) excludes relatives or spouses living in the same household from the purchaser count, so Patel's count is proper. Second, there is no genuine issue of material fact as to whether Patel "reasonably believed each purchaser to be capable of evaluating the merits and risks of the investment," as § 230.506(a) requires. Plaintiffs dispute that assertion in Defendants' SOF, but their only supporting citation to the record pertains only to the question of how many unaccredited purchasers existed. Moreover, in their Response to Defendants' Motion for Summary Judgment, Plaintiffs do not argue that Patel's belief was unreasonable. Therefore, the reasonableness of Patel's belief in his purchasers' capacity to make an informed decision to invest in Sitara Partners is undisputed.

Finally, there is no genuine issue of material fact as to whether Sitara Partners provided unaccredited purchasers with the disclosures required by § 230.502. Plaintiffs' claim that the disclosures were insufficient consists of the following three sentences, unsupported by any citation to the record or either party's SOFs: "The exemption will not apply if even one of the individuals to whom the interest was offered did not have the requisite information that would have been supplied through registration. The issue of whether offerees had access to, or were supplied with, the requisite information is a question of fact. . . . Defendants have failed to

supply the information required to meet their burden of proof regarding the section 4(2), private placement, Regulation D exemption." (Pls.' Resp. to Defs.' Mot. for Summ. J. 5-6 (citation omitted).) These conclusory statements, which do not identify what information Plaintiffs believe was missing and why they believe it was required, do not create a genuine issue of material fact.

Defendants, in contrast, point to the CPOM, provided to all investors by Patel, which they assert contains all information "material to an understanding of the issuer, its business and the securities being offered," as required by § 230.502. They also point to Sitara Partners' Financial Statements from 2005, 2006, and 2007. (Defs.' SOF Ex. 5 (Financial Statements).) The CPOM is a 45-page, single-spaced document outlining in detail the nature of the interests being offered, Sitara Partners' investment methodology, tax considerations, the responsibilities of the General Partner, and risk factors. Plaintiffs fail to indicate any specific piece or even broad category of information missing from the document, arguing only that "Defendants failed to supply the information required." The court finds that Plaintiffs have not raised a genuine issue of material fact as to whether the required information was supplied to them and therefore grants summary judgment to Defendants on Count I.

**B. Illinois Securities Law of 1953 Claim (Count IX)**

Plaintiffs claim that Sitara Capital and Patel violated § 12(C) of the Illinois Securities Law of 1953, 815 Ill. Comp. Stat. 5/12(C), by acting as an investment advisor and investment advisor representative without being registered as such. The registration requirement ensures that investment advisors and their representatives have "sufficient knowledge of the securities business and laws relating thereto to conduct the business of a registered investment adviser" and ensures a consistent level of "financial responsibility, business repute and qualification to act as

an investment adviser" in the profession. *Id.* at 5/8(D)(8)-(D)(9). Plaintiffs demand the only non-injunctive remedy provided for the alleged violation by the statute: rescission of the sale of securities under § 13(A), which states that "[e]very sale of a security made in violation of the provisions of this Act shall be voidable at the election of the purchaser[.]" *Id.* at 5/13(A). Plaintiffs wish to rescind their purchases of limited partnership interests in Sitara Partners and thereby recover the $1 million, $325,000, and $400,000 that the Gandhi Trust, the Vyases, and the Majmundars, respectively, invested in Sitara Partners.

Defendants concede that they were "arguably" required to register—Sitara Capital as an investment advisor and Patel as an investment advisor representative—and failed to do so, in violation of the Illinois Securities Law. They contend, however, that the alleged failure to register was not in connection with a "sale of securit[ies]," and that Plaintiffs are not entitled to rescission. Defendants argue that Patel's and Sitara Capital's actions in their capacity as investment advisor and investment advisor representative to Sitara Partners are separate from Patel's actions in selling securities to Plaintiffs, and that the sale of securities to Plaintiffs was not "made in violation of" the registration statute.

The court agrees. The Illinois Securities Law must be interpreted consistently with the federal laws on which it is based. S*ee Hidell v. Int'l Diversified Invs.*, 520 F.2d 529, 540 n.14 (7th Cir. 1975); *People v. Whitlow*, 433 N.E. 2d 629, 633-34 (Ill. 1982) (looking to federal case law to interpret the Illinois Securities Law). The federal statute governing investment advisors is the Investment Advisor Act of 1940. Courts interpreting the Investment Advisor Act have repeatedly found that individual investors in a fund are not clients of the fund's investment advisor and therefore cannot sue under the Act. *See, e.g.*, *Goldstein v. S.E.C.*, 451 F.3d 873, 879-80 (D.C. Cir. 2006); *S.E.C. v. Sentinel Mgmt. Grp.*, No. 07 CV 4684, 2012 WL 1079961, at

*12-13 (N.D. Ill. Mar. 30, 2012); *Zurich Capital Mkts., Inc. v. Coglianese*, 332 F. Supp. 2d 1087, 1114 (N.D. Ill. 2004).

This case is slightly more complicated than those cited above, because the salesman who sold Plaintiffs the securities in question and the investment advisor representative who advised Sitara Partners are the same person: Rajiv Patel. But Plaintiffs do not dispute that Patel and Sitara Capital were not acting as their investment advisors at the time of the sale. As explained above, although Plaintiffs "granted discretionary authority over their invested funds to Patel and Sitara," they "do not dispute that they individually did not have independent advisory accounts with Patel or Sitara." (Plaintiffs' Resp. to Defs.' SOF ¶ 3, ECF No. 77.) Defendants' client was Sitara Partners. If Plaintiffs as individuals had contracted with Patel to advise them, and Patel had, acting as an unregistered investment advisor, advised them to buy a limited partnership in Sitara Partners, that sale would likely be "made in violation of" the rule requiring investment advisors to register. But Patel was not acting in his capacity as an investment advisor when he sold Plaintiffs the limited partnerships in Sitara Partners, and therefore the sale was not "made in violation of" the registration requirement.

Plaintiffs claim that if the court does not allow them a rescission remedy for Defendants' failure to register, "an investment advisor could never be held accountable," because the only remedy allowed in the Illinois Securities Law for failure to register is rescission of a sale of securities. But the fact that Plaintiffs, who admit that Patel did not directly give them investment advice, have no remedy for Defendants' failure to register does not mean that the statute provides no remedy for clients who receive investment advice directly from an unregistered investment advisor. *See, e.g.*, *First City Secs. v. Shaltiel*, 44 F.3d 529, 533-34 (7th Cir. 1995) (declaring sales made by licensed broker also operating as an unlicensed investment advisor possibly

13

voidable under 815 Ill. Comp. Stat. 5/13 due to investment advisor's failure to register). Because the Plaintiffs admit that Defendants never provided investment advisory services directly to them, there is no disputed factual issue material to this claim, and the court grants summary judgment to Defendants.

**C. ERISA Claim (Count XII)**

The Vyases and the Majmundars (the "ERISA Plaintiffs") bring a claim on behalf of their ERISA-covered benefit plans for breach of the fiduciary duties imposed by ERISA. Under 29 U.S.C. §§ 1109 and 1132(a)(2), plan fiduciaries who breach their duties are personally liable to make good any losses to the plan resulting from the breach. "[A] participant in a defined contribution plan may bring [an] action for breach of fiduciary duty as to an individual account." *Peabody v. Davis*, 636 F.3d 368, 373 (7th Cir. 2011). In order to state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege that (1) the defendants were plan fiduciaries; (2) the defendants breached their fiduciary duties; and (3) a cognizable loss occurred. *Herdrich v. Pegram*, 154 F.3d 362, 369 (7th Cir. 1998), *rev'd on other grounds*, 530 U.S. 211 (2000).

To prevail, the ERISA Plaintiffs must first prove Defendants were fiduciaries with respect to the ERISA plans. Under 29 U.S.C. § 1002(21)(A), "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, [or] (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so[.]"

The ERISA Plaintiffs do not explain which language in § 1002(21)(A) establishes Defendants' fiduciary duties to their plans. The CPOM explains that if assets in the Fund are

14

"plan assets" of an ERISA plan, "the General Partner would be a 'fiduciary' (as defined in ERISA) with respect to such Plans." (CPOM 11.) The ERISA Plaintiffs appear to seize upon this language to argue that Defendants owed the ERISA Plaintiffs fiduciary duties. They do not, however, explain why the assets in the Fund should be considered ERISA "plan assets."

The United States Department of Labor has issued regulations defining when investments in another entity—such as a hedge fund—are considered "plan assets" of an ERISA plan, such that the management of those assets would be subject to ERISA's fiduciary duties. The relevant language appears in 25 C.F.R. § 2510.3-101(a)(2):

> Generally, when a plan invests in another entity, the plan's assets include its investment, but do not, solely by reason of such investment, include any of the underlying assets of the entity. However, in the case of a plan's investment in an equity interest of an entity that is neither a publicly-offered security nor a security issued by an investment company registered under the Investment Company Act of 1940 its assets include both the equity interest and an undivided interest in each of the underlying assets of the entity, *unless it is established that—*
>
> (i) The entity is an operating company, or
>
> (ii) *Equity participation in the entity by benefit plan investors is not significant.*
>
> Therefore, any person who exercises authority or control respecting the management or disposition of such underlying assets, and any person who provides investment advice with respect to such assets for a fee (direct or indirect), is a fiduciary of the investing plan.

§ 2510.3-101(a)(2) (emphasis added). The import of this language is that where there is "significant" participation in a privately offered security by ERISA-qualified plans, the manager of the underlying assets is considered a fiduciary of the ERISA plans. *See, e.g.*, *Chao v. USA Mining, Inc.*, Nos. 04-cv-1, 04-cv-138, 2007 WL 208530, at *8 (E.D. Tenn. 2007) (holding that because "the Plans' equity participation . . . was significant[,] . . . . Every individual who exercised authority or control over the underlying assets owed a fiduciary duty to the Plans").

15

This, in turn, requires a definition of "significant" participation:

Participation by benefit plan investors. (1) Equity participation in an entity by benefit plan investors is "significant" on any date if, immediately after the most recent acquisition of any equity interest in the entity, *25 percent or more of the value of any class of equity interests in the entity is held by benefit plan investors*[.]

§ 2510.3-101(f) (emphases added); *see Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*, No. 05-cv-60080, 2008 WL 926509, at *8 (S.D. Fla. 2008) (because equity interests of benefit plan investors exceeded 25 percent of fund, any person who managed or directed fund assets or rendered investment advice for a fee was an ERISA fiduciary); *Ennis v. Montemayor*, 14 F. Supp. 2d 379, 389 (S.D.N.Y. 1998) (explaining that the Department of Labor deliberately created an "exclusion . . . for entities in which there was no 'significant' plan investment" because "there is no substantial expectation that the assets of the entity will be managed in furtherance of the investment objectives of the plan") (internal quotation marks, citations, and emphasis omitted).

The upshot of the federal regulations is that Defendants are considered fiduciaries of the ERISA Plaintiffs' benefit plans only if the plans constituted more than 25 percent of the equity interest in the Fund. This was not the case, and the ERISA Plaintiffs admit as much. In their Response to Defendants' Motion for Summary Judgment, they concede that Sitara Partners "complied with the 25% limitation." (Pls.' Mem. in Opp. To Defs.' Mot. for Summ. J. 8 n.1, ECF No. 75.) Given the exclusion in §§ 2510.3-101(a)(2) and (f), the court finds no basis to conclude that Defendants were ERISA fiduciaries; the ERISA Plaintiffs' claim fails accordingly.

## D. Leave to Amend

Plaintiffs have requested leave to file a Third Amended Complaint that includes amended Counts III (violations of § 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934); VII

16

(violations of § 12(g) of the Illinois Securities Law of 1953); XV (common-law fraud-in-the-inducement); and XVI (common-law fraudulent misrepresentation).

The court previously dismissed Plaintiffs' federal and state securities law claims and state law fraud claims because Plaintiffs failed to allege any material misrepresentations by Defendants that predated Plaintiffs' decision to invest in Sitara Partners. Plaintiffs now claim that discovery has revealed that Defendants made two material misrepresentations: Patel did not invest any of his personal funds in Sitara Partners at the inception of the Fund, and none of the money Patel received from the sale of Maestro Commerce was invested in Sitara Partners. Plaintiffs claim that they relied on these misrepresentations about Patel's "skin in the game" in deciding to purchase limited partnership shares in Sitara Partners. Plaintiffs now seek to "revise the federal and state securities law claims . . . based on Defendant Patel's admission that he did not invest any of the promised funds in the partnership at its formation." (Pls.' Mot. for Leave to File Third Am. Compl. 3, ECF No. 64.)

Leave to file an amended complaint is "given freely when justice so requires." Fed. R. Civ. P. 15(a). This lenient standard, however, "does not mean [leave] must always be given. District courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009).

Here, the most important of these considerations is the court's conclusion that Plaintiffs' proposed amendments would be futile. The Third Amended Complaint alleges in Count III that the CPOM's statement that "Patel intends to contribute no less than one hundred thousand dollars to the Partnership" "was false and misleading," and further alleges that Patel made

17

similar oral misrepresentations to the Plaintiffs. The CPOM, however, does not state that Patel would invest money at the *inception* of the Fund; it states that Patel "intended" to contribute to the Fund. Patel invested his management and incentive fees in Sitara Partners. As Plaintiffs acknowledge, those fees totaled between $100,000 and $500,000. Patel therefore did put his personal funds at risk in the Fund. Count VII relies on the same alleged misrepresentation, as do the common-law allegations in counts XV and XVI. Because none of the proposed amended counts allege a misrepresentation by Defendants, each of these counts will inevitably fail.

As further support for its decision to deny leave to amend, the court also notes that Plaintiffs have had multiple opportunities to cure the deficiencies in their pleadings. Plaintiffs' Complaint was filed on May 26, 2009. They subsequently filed a First Amended Complaint on March 21, 2010, and a Second Amended Complaint on April 1, 2011, each following motions to dismiss. Moreover, although Patel's deposition testimony was procured after the Second Amended Complaint was filed, it appears that Plaintiffs knew well before the deposition was taken that Patel had not invested as much of his personal money in the Fund as they originally believed. (*See* Gandhi Interrog. Resp. 5.) The court concludes that if Plaintiffs had in fact relied on representations about Patel's personal investments, they could have pleaded such reliance in one of the three previous versions of their complaint.

In addition, amendment of the complaint would unfairly prejudice Defendants, who have now prevailed on a motion for summary judgment. *See Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 774 (7th Cir. 1995) ("[W]e have affirmed denials of a motion for leave to amend . . . where a plaintiff has sought leave to amend after the defendant filed a successful motion for summary judgment."). Allowing leave to amend would likely require Defendants to file yet another motion to dismiss and might require new discovery on Plaintiffs' new claims, which would

require Plaintiffs to prove, among other things, that they relied on Defendants' alleged misrepresentations.

Because leave to amend would be futile, and because Plaintiffs have repeatedly failed to cure the deficiencies in their complaint and amendment would cause undue prejudice to Defendants, the court denies Plaintiffs' motion for leave to file a Third Amended Complaint.

### IV. CONCLUSION

Because, construing all facts in favor of Plaintiffs, they cannot establish a genuine issue of material fact as to their federal and Illinois securities law or ERISA claims, the court grants Defendants' motion for summary judgment. The court also denies Plaintiffs' motion for leave to file a Third Amended Complaint. The case is dismissed.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: August 14, 2012